# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DAILY SERVICES, LLC,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 2:11–cv–1147** |
| | : | **Judge Watson** |
| **TRACY VALENTINO,** *et al.*, | : | **Magistrate Judge Deavers** |
| | : | |
| **Defendants.** | : | |

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, <u>ALTERNATIVELY, TO STAY ON THE GROUNDS OF ABSTENTION</u>

NOW COME Defendants Tracy Valentino, Tina Kielmeyer, Tom Sico, and John Does, Nos. 1 through 5 (collectively "Defendants"), by and through counsel, and under Rule 12(c) of the Federal Rules of Civil Procedure, respectfully move for judgment on the pleadings and ask that the Court dismiss with prejudice Plaintiff's Complaint for failure to state a claim for relief. As shown below, principles of qualified immunity, absolute immunity, and the doctrine of mootness defeat Plaintiff's constitutional claims as a matter of law. Alternatively, Defendants request that the Court abstain from hearing this case under the principles of *Younger v. Harris*, 401 U.S. 37 (1971).

The reasons supporting this Motion are set forth in greater detail in the accompanying Memorandum in Support.

Respectfully submitted,

MICHAEL DEWINE (0009181)
Attorney General of Ohio

s/ James A. King
James A. King (0040270)
Trial Attorney
James B. Hadden (0059315)
Caitlin E. Chamberlin (0084229)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street
Columbus, Ohio  43215
Phone:  (614) 227-2000 Fax: (614) 227-2100
jking@porterwright.com
jhadden@porterwright.com
cchamberlin@porterwright.com

*Special Counsel to Ohio Attorney General,*
*Counsel for Defendants Tracy Valentino, Tina*
*Kielmeyer, Tom Sico, and John Does 1 through 5*

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ...................................................................................................................1

II. STATEMENT OF FACTS ......................................................................................................4

    A.    The Parties ........................................................................................................4

    B.    I-Force's Liability To The BWC .......................................................................4

    C.    BWC's Legal Actions To Recover The Amounts That I-Force Owes....................5

        1.    The First Judgment and Lien, and the Case Before Judge McIntosh ..........5

        2.    The Experience Determination ...................................................................6

        3.    The First Case Before Judge Bessey............................................................6

        4.    The Case Before Judge Fais........................................................................7

        5.    The Case Before Judge Reece.....................................................................8

        6.    The "Talent" Case .....................................................................................9

        7.    The Second Case Before Judge Bessey ....................................................10

        8.    The Present Lawsuit.................................................................................10

III. LAW AND ARGUMENT .....................................................................................................11

    A.    Standard of Review............................................................................................11

> Motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) are reviewed under the same standard as motions to dismiss under Fed. R. Civ. P. 12(b)(6).  While matters outside the pleadings may not be considered in ruling on a motion to dismiss, a court may take judicial notice of other court proceedings and may consider documents attached to or cited in the plaintiff's complaint in ruling on a motion to dismiss.
> Primary Authority:  *Jelovsek v. Bredesen,* 545 F.3d 431, 434 (6th Cir. 2008); *Buck v. Thomas Cooley Law Sch*., 597 F.3d, 812, 816 (6th Cir. 2010).

B.      Defendants Are Entitled To Qualified Immunity ....................................................12

Plaintiff's Complaint should be dismissed under the doctrine of qualified immunity.  Plaintiff has failed to allege violation of a clearly established constitutional right because the facts, as pleaded in the Complaint, make clear that Plaintiff had adequate state law remedies available to redress the alleged violations.  Plaintiff also cannot show that Defendants would have been on clear notice that their actions violated the right to procedural due process under the Fourteenth Amendment.

Primary Authority:  *Pearson v. Callahan,* 555 U.S. 223 (2009); *Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Parratt v. Taylor*, 451 U.S. 527 (1981); *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999); *Clemons v. Frassetto*, 132 F.3d 32, 1997 WL 778121, at *1 (6th Cir. 1997); *CareToLive v. Eschenbach,* 525 F. Supp. 2d 952 (S.D. Ohio 2007).

C.      Plaintiff's Due Process Claims Should Be Dismissed As Moot ...........................20

Daily Services' success in availing itself of state law remedies renders its constitutional claims moot.

Primary Authority:  *Braley v. City of Pontiac*, 906 F.2d 220 (6th Cir. 1990); *WJW-TV, Inc. v. City of Cleveland*, 878 F.2d 906 (6th Cir. 1989).

D.      Defendant Valentino Is Immune From Suit...........................................................22

Defendant Valentino enjoys absolute immunity from suit because the actions that Plaintiff challenges were quasi-judicial in nature.

Primary Authority:  *Mack v. Ohio State Dental Bd.*, 2001 WL 309115 (Tenth Dist. Ct. App. Mar. 30, 2001); *Stump v. Sparkman*, 435 U.S. 349 (1978)

E.      *Younger* Abstention Applies.................................................................................22

The Court should abstain from hearing Plaintiff's claims under *Younger* because the central issues to be adjudicated here are the subject of two pending state law actions.

Primary Authority:  *Younger v. Harris,* 501 U.S. 37 (1971); *Carroll v. City of Mount Clemens*, 139 F.3d 1072, (6th Cir. 1998); *Fieger v. Cox*, 524 F.3d 770 (6th Cir. 2008).

IV.  CONCLUSION......................................................................................................25

**MEMORANDUM IN SUPPORT**

## I.  INTRODUCTION

This lawsuit arises from a series of alleged procedural errors by the Ohio Bureau of Workers' Compensation ("BWC") in attempting to collect approximately $3.5 million in unpaid workers' compensation premiums from two related companies.  The two companies are Plaintiff Daily Services, LLC ("Daily Services") and I-Force LLC ("I-Force").  Both companies are based in Columbus, Ohio, are run out of the same location, and are owned by the same individual, Ryan Mason.  Their principal business is the same too, with both companies providing temporary staffing services to local employers.  In March 2009, I-Force stopped operating and Daily Services assumed its business.  At the time, however, I-Force owed over $3.0 million to the BWC in unpaid workers' compensation premiums.

The BWC then began efforts to collect these premiums from I-Force and its successor, Daily Services.  It is those efforts that lie at the heart of Daily Service's Complaint.  Daily Services asserts that the BWC failed to follow certain procedures established in the Ohio Revised Code and Ohio Administrative Code for assessing unpaid premiums and obtaining judgments and liens for the amounts owed.  For example, the Complaint alleges that with one judgment, the BWC sent written notice of the assessment by regular mail, instead of by certified mail as required by Ohio Rev. Code § 4123.37.  With another, the Complaint claims that the BWC sent the notice only to I-Force and not to Daily Services.  And with yet another, the Complaint charges the BWC with failing to make the requisite prior finding under Ohio Admin. Code § 4123-17-02(C) on Daily Services' liability as a successor to I-Force before obtaining judgment.

While the Complaint goes to great lengths in describing the BWC's alleged procedural missteps, the Complaint also makes clear that Daily Services and its counsel were able to take

1

advantage of those missteps.  The Complaint alleges that, not less than four times, the BWC obtained a judgment and associated lien for the unpaid premiums.  But each time, Daily Services challenged the BWC's judgment in the Franklin County Court of Common Pleas, arguing that the BWC failed to follow its procedures to the letter in securing the judgment and lien.  Each time, the judge agreed, and each time, the judgment and lien were released.

Despite the fact that the BWC is still owed millions of dollars in unpaid premiums, Daily Services has decided to employ the old adage that "the best defense is a good offense."  In an effort to avoid having to pay I-Force's debt, Daily Services has now, literally, made this a federal case by bringing the present lawsuit against three individual employees (including a lawyer) of the BWC.  In its Complaint, Daily Services claims that the alleged procedural missteps by the BWC in assessing and attempting to collect the unpaid premiums – missteps that that were ultimately redressed by the Franklin County Court of Common Pleas – violated Daily Services' right to procedural due process under the Fourteenth Amendment to the Constitution.  U.S. Const. amend IX, § 1.  Daily Services has asserted nine separate causes of action against Defendants under 42 U.S.C. § 1983 and seeks over $1.0 million in money damages.

Defendants now move for judgment on the pleadings under Fed. R. Civ. P. 12(c) and ask that this Court dismiss this action for failure to state a claim for relief.  Alternatively, Defendants request that the Court abstain from hearing the case on the grounds of abstention.  First, Defendants are entitled to qualified immunity from suit.  While the facts as alleged in the Complaint may appear complex given the myriad of court actions, administrative proceedings, judgments, and liens attributable to the BWC's efforts to collect I-Force's unpaid premiums, at its core the case is very simple.  To state a claim for violation of procedural due process, a plaintiff must allege that available state remedies to redress the defendant's alleged wrongs were

2

inadequate.  Daily Services has made no such allegation.  On the contrary, the Complaint pleads

the opposite.  Over and over, Daily Services alleges that it had and took advantage of state

remedies to challenge the BWC's actions.  And every time, Daily Services prevailed.  Clearly,

Daily Services had access to adequate state remedies.  As a matter of law, its Complaint must be

dismissed.

Second, Daily Services' due process claims are moot.  Again, the Complaint specifically

alleges that Daily Services pursued state law remedies to redress the BWC's actions and that

Daily Services was successful in pursuing those remedies.  Since Daily Services has obtained

relief in the state court, it cannot as a matter of law bring separate federal claims for these same

alleged wrongs.  The claims are moot.

Third, the claims against Defendant Valentino must be dismissed altogether because she

is entitled to absolute immunity.  Daily Services has sued her in her capacity as an administrative

employee performing quasi-judicial functions.  As a matter of law, those actions cannot serve as

the basis for a due process claim.

Finally and as an alternative to dismissing the case entirely, at a minimum the Court

should stay this case under the *Younger* abstention doctrine.  Daily Services already has now two

separate lawsuits pending against the BWC in Ohio state court, one before the Franklin County

Court of Common Pleas and another before the Tenth District Court of Appeals.  This Court

should abstain from proceeding in this matter until those cases are resolved.

II.     **STATEMENT OF FACTS.**

    A.     **The Parties.**

Plaintiff Daily Services, LLC is an Ohio limited liability company with its principal place of business in Franklin County, Ohio. Compl. ¶ 2, ECF No. 1. Ryan Mason is the owner and sole member of Daily Services and another Ohio limited liability company, I-Force, LLC. *Id.* ¶ 16. Both Daily Services and I-Force are engaged in the business of providing temporary employment services to employers in central Ohio. *Id.* ¶ 17. Daily Services' principal focus has been on providing employers with temporary employees on a short-term basis, while I-Force provides employees under long-term contracts. *Id.* ¶ 18.

Defendants Tracy Valentino, Tina Kielmeyer, and Tom Sico are all employees of the Ohio Bureau of Workers' Compensation. *Id.* ¶¶ 3–5. Defendant Valentino is the Chief Financial Officer of the BWC. *Id.* Defendant Sico is a lawyer and Assistant General Counsel of the BWC. *Id.* Defendant Kielmeyer is the Chief of Customer Service of the BWC. *Id.* All three are named as defendants in their individual capacities.

    B.     **I-Force's Liability To The BWC.**

This case all started when I-Force stopped paying workers' compensation premiums that it owed to the BWC. Like all Ohio employers, Daily Services and I-Force are required to report payroll and pay premiums for workers' compensation coverage on a semi-annual basis. Ohio Rev. Code § 4123.35. The administrator of the BWC determines premium rates according to Ohio statutes. *Id.* Employers such as Daily Services and I-Force are required to report payroll and pay premiums twice a year based on that reported payroll.

In June 2008, I-Force applied with the BWC to become self-insured for purposes of workers' compensation coverage. Compl. ¶ 20. In November 2008, the BWC denied its

4

application. *Id.* ¶ 24.  At the time, I-Force owed over $3.0 million in premiums to the BWC.  *Id.* ¶ 25.  I-Force could not make these payments, so in March 2009 it closed down.  *Id.* ¶ 26. Immediately afterwards, Ryan Mason – the sole member of I-Force and Daily Services – transferred I-Force's longer-term employment services business to Daily Services.  *Id.* ¶ 27.

### C.    BWC's Legal Actions To Recover The Amounts That I-Force Owes.

#### 1. The First Judgment and Lien, and the Case Before Judge McIntosh.

The BWC then began a series of actions intended to determine that Daily Services was the corporate successor to I-Force and is, thus, responsible for the unpaid workers' compensation premiums that I-Force owes.  On or about June 25, 2009, the BWC issued a precipe under Ohio Rev. Code § 4123.37 in the amount of $3,885,389.38 for I-Force's unpaid workers' compensation premiums.  Compl. ¶ 44.  The BWC filed the precipe in the Franklin County Court of Common Pleas.  Compl. Ex. 1.  In accordance with § 4123.37, the precipe operated as a judgment against I-Force upon acceptance by the Franklin County Clerk of Courts.

The BWC feared that Daily Services' and I-Force's owner, Ryan Mason, would transfer assets and operations among his companies in an effort to avoid having to pay I-Force's workers' compensation premiums.  Therefore, in September 2009, the BWC filed suit against Ryan Mason, I-Force, Daily Services, and another of Mr. Mason's companies in the Franklin County Court of Common Pleas seeking the appointment of a receiver, or in the alternative an injunction, to prevent Mr. Mason and his companies from transferring assets to avoid I-Force's debt to the BWC.  *Id.* ¶¶ 11, 47–50.  The case, *State of Ohio, BWC v. Ryan Mason,* Case No. 09-CV-13229, was assigned to Common Pleas Court Judge Stephen McIntosh.

In March 2010, Judge McIntosh denied the BWC's request for a receiver in favor of an agreed injunction.  The agreed injunction ordered that the defendants, among other things, make

monthly payments of $35,000 toward past due premiums or claim costs, and that the BWC was not to execute on existing liens against Mr. Mason's companies while $35,000 payments were being made.  *See* Injunction, March 31, 2010, a true and accurate copy of which is attached hereto as Ex. A.  In March 2011, the BWC voluntarily dismissed the case and Judge McIntosh denied the defendants' motion for return of the amounts paid to the BWC under the injunction. Decision and Entry, Aug. 16, 2011, a true and accurate copy of which is attached hereto as Ex. B.

### 2. The Experience Determination.

The case before Judge McIntosh did not end the matter.  In October 2009, an Adjudicating Committee of the BWC held a hearing on the relationship between I-Force and Daily Services because Daily Services had taken up part of I-Force's business.  Compl. ¶ 51. The BWC had determined that, pursuant to Ohio Admin. Code § 4123-17-02(B), the workers' compensation rate that Daily Services was obligated to pay should be based on the experience under I-Force's workers' compensation policy.  Compl. Ex. 4.  In a written decision mailed the next day on October 16, 2009, the Adjudicating Committee affirmed the combination.  *Id.*

### 3. The First Case Before Judge Bessey.

The BWC interpreted the Adjudicating Committee's order as also determining that, under Ohio Admin. Code § 4123-17-02(C), Daily Services was a successor to I-Force, and that Daily Services was therefore liable for the back premiums owed by I-Force.  Based on this interpretation, the BWC filed a precipe for judgment against Daily Services totaling $54,959,570.71.  Compl. ¶ 54, Ex. 5.  That amount was simply the balance on the workers' compensation policy at that moment.  The BWC had attempted to audit the policy to determine a more precise amount that was owed, but had not received cooperation from either I-Force or

Daily Services.  The BWC also filed a lien with the Franklin County Recorder's Office pursuant to Ohio Rev. Code § 4123.78.  Compl. ¶ 55.  Soon thereafter, the BWC filed a separate lien with an adjusted amount totaling approximately $22 million.  Compl. ¶ 60, Ex. 8.

Daily Services challenged the BWC's judgment in the Franklin County Court of Common Pleas by moving for relief from judgment under Rule 60(B) of the Ohio Rules of Civil Procedure.  *Id.* ¶ 59.  The matter was assigned to Common Pleas Judge John Bessey.  *Id.*, Ex. 7. Judge Bessey granted Daily Services' motion, finding that the BWC failed to notify Daily Services before filing the precipe and lien.  *Id.*  Judge Bessey also found that the Adjudicating Committee's order did not address the issue of whether Daily Services was a successor to I-Force's rights and obligations pursuant to Ohio Admin. Code § 4123-17-02(C).  *Id.*  Accordingly, Judge Bessey set aside the $54 million judgment.  Based on Judge Bessey's ruling, the BWC filed a release of the $54 million lien and the $22 million lien.  Compl.  ¶¶ 59, 62.

### 4. The Case Before Judge Fais.

In early 2010, the BWC completed its audit to determine the amounts that I-Force and Daily Services owed.  In conjunction with that audit, the BWC created new assessments and the balance was reduced to reflect the audit's results.  In May 2010, the BWC issued a notice of assessment associated with some of the newly-posted audit results.  In July 2010, the BWC filed a precipe for judgment and lien for $3,145,934.91.  Compl. ¶¶ 64–67, Exs. 9 & 10.  Daily Services again moved for relief from judgment pursuant to Ohio Civil Rule 60(B).  This matter was heard by Franklin County Common Pleas Court Judge David Fais.  The BWC did not oppose the motion because it had learned that, due to a clerical error, notice had not been properly mailed to Daily Services.

7

In October 2010, Judge Fais granted Daily Services' motion based on the fact that the BWC failed to serve the notice of assessment on Daily Services by certified mail as prescribed by Ohio Rev. Code § 4123.37. *Id.* ¶ 67, Ex. 11. Judge Fais ordered that the judgment be set aside. In February 2011, the BWC released the lien associated with the judgment. *Id.* ¶ 67.

### 5. The Case Before Judge Reece.

In light of Daily Services' success in moving for relief from judgment, the BWC determined that the best course of action would be simply to issue a new notice of assessment to Daily Services. In September 2010, the BWC issued a new notice to Daily Services for $3,170,366.53 in unpaid I-Force premiums. *Id.* ¶ 68. Daily Services protested that assessment. *Id.* In January 2011, a hearing was held before the BWC's Adjudicating Committee. *Id.* ¶ 69. On February 9, 2011, the Adjudicating Committee affirmed the assessment. *Id.* ¶ 71, Ex. 12.

Daily Services appealed the order. On April 19, 2011, the appeal was heard by the BWC Administrator's Designee. *Id.*, Ex. 15. At the hearing, Daily Services was given a copy of an audit report that described, in detail, the experience transfer and payroll that was being transferred that was the basis of the underlying debt. The Designee determined that the debt owed totaled $3,457,119.28 as of the date of the hearing, plus $665,648.22 in interest and collection fees. *Id.* The Designee also determined that when the Adjudicating Committee determined in October 2009 that the experience of I-Force was transferred to Daily Services under Ohio Admin. Code § 4123-17-02(B), that determination necessarily meant that Daily Services also was liable for I-Force's obligations as a successor under Ohio Admin. Code § 4123-17-02(C). *Id.*

Ohio Rev. Code § 4123.37 expressly provides that "when a finding is made affirming or modifying an assessment after hearing," the BWC may file a judgment lien. Because the

Adjudicating Committee's February 9, 2011 order affirmed the assessment against Daily Services after a hearing, the BWC filed a precipe for judgment against Daily Services and a lien for $3,170,366.53. *Id.* ¶¶ 74–75, Exs. 13 & 14. Along with the precipe, the BWC filed a copy of the Adjudicating Committee's February 9, 2011 order. *Id.*

As it had done twice before, Daily Services filed a motion for relief under Rule 60(B) of the Ohio Rules of Civil Procedure. *Id.* ¶ 79. This motion was heard by Common Pleas Court Judge Guy Reece. On November 21, 2011, Judge Reece granted Daily Services' motion. *Id.* ¶ 83. Judge Reece determined that that the judgment was not final when it was filed because of the outstanding appeal to the Administrator's Designee. *Id.*, Exs. 16 & 13. Judge Reece also concluded that principles of res judicata precluded the BWC from concluding that the Adjudicating Committee's October 2009 decision found that Daily Services was liable for I-Force's debt as a successor under Ohio Admin. Code § 4123-17-02(C). That was because Judge Bessey earlier had ruled that no such determination had even been made. For these reasons, Judge Reece set aside the $3.1 million judgment. *Id.* ¶ 83.

The BWC believes that Judge Reece erred in granting Daily Services relief from judgment in several respects. It therefore appealed Judge Reece's decision to the Tenth District Court of Appeals. The appeal remains pending. Because it took an appeal, the BWC did not release the lien associated with the judgment. *Id.* ¶ 84. Indeed, Judge Reece agreed to stay his order until the appeal is decided.

### 6. The "Talent" Case.

In addition to I-Force and Daily Services, Ryan Mason owns several other companies, including Talent Staffing, LLC, Ascend Services, LLC, Business Brands, LLC, and Work Brands, LLC. *Id.* ¶ 86. The BWC determined that these commonly-held companies should be

combined into one workers' compensation policy.  Daily Services protested the determination.
In November 2011, the BWC's Adjudicating Committee held a hearing to determine whether
these four companies should be combined under the same policy with Daily Services pursuant to
Ohio Admin. Code § 4123-17-13(C).  *Id.*

On November 12, 2011, the BWC prepared a judgment and lien for $8,351.55 before the
Adjudicating Committee had issued a ruling.  *Id.* ¶ 88, Exs. 17 & 19.  While Plaintiff asserts that
it is in the process of filing yet another Civil Rule 60(B) motion, the BWC has since released the
judgment and lien.  *See* Journal Entry & Lien Release, true and accurate copies of which are
attached hereto as Ex. C.

### 7. The Second Case Before Judge Bessey.

Meanwhile, on December 21, 2011, Daily Services filed its own lawsuit against the BWC
in the Franklin County Court of Common Pleas.  That case, styled *Daily Services, LLC v. Ohio
Bureau of Workers' Compensation,* is docketed as Case No. 11-CV-015913, and is assigned to
Judge John Bessey.  In its complaint, Daily Services alleges that the BWC was unjustly enriched
by the terms of the injunction imposed by Judge McIntosh and has requested the return of the
$385,000 paid according to its terms.  Daily Services also requests a declaratory judgment that
the BWC is precluded from seeking to collect the back premiums that I-Force owes for various
reasons.  In response, the BWC filed counterclaims seeking, among other things, a determination
that Daily Services is liable for I-Force's unpaid workers' compensation premiums under
principles of successor corporate liability and under Ohio Admin. Code § 4123-17-02(C).

### 8. The Present Lawsuit.

On December 22, 2011 – just one day after filing suit against the BWC in the Franklin
County Court of Common Pleas – Daily Services filed this lawsuit in federal district court

against three employees of the BWC.  In its Complaint, Daily Services alleges that the Chief Financial Officer, Chief of Customer Service, and an Assistant General Counsel of the BWC are all individually liable under 42 U.S.C. § 1983 for violating Daily Services' right to procedural due process.  The Complaint alleges nine separate causes of action against these BWC employees, all of which relate to a specific judgment or lien that the BWC took to collect the debt owed by I-Force and Daily Services.  Even though the Complaint pleads that Daily Services challenged all these actions in one way or another by using available state-law remedies, Daily Services nonetheless seeks over $1.0 million in money damages from these three state employees.  Daily Services makes this demand despite the fact that, to this day, its predecessor I-Force has never paid the over $3.0 million in worker' compensation premiums that it owes to the BWC.

## III.    LAW AND ARGUMENT

### A.    Standard of Review.

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings after the pleadings are closed.  Fed. R. Civ. P. 12(c).  Motions for judgment on the pleadings are reviewed under the same standard as motions to dismiss under Rule 12(b)(6).  *Jelovsek v. Bredesen,* 545 F.3d 431, 434 (6th Cir. 2008).  Courts "must construe the complaint in the light most favorable to the plaintiff," "accept all well-plead factual allegations as true," and "determine whether the complaint states a plausible claim for relief." *Albrecht v. Treon*, 617 F.3d 890, 890 (6th Cir. 2010).

As a general rule, matters outside the pleadings may not be considered in ruling on a Rule 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Rule 56.  *See Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir. 1997).  There are exceptions to

that rule, however.  "[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Buck v. Thomas Cooley Law Sch.*, 597 F.3d, 812, 816 (6th Cir. 2010).  In addition, documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim.  *Weiner*, 108 F.3d at 89.  A court may consider an undisputedly authentic document attached to a motion to dismiss if the plaintiff's claims are based on that document. *See PBGC v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Courts also may consider public records or letter decisions of governmental agencies, such as documents filed in the Ohio Courts of Common Pleas.  *See, e.g., Jackson v. City of Columbus*, 67 F. Supp. 2d 839, 853 (S.D. Ohio 1998) (Graham, J.), *aff'd in part and rev'd in part by* 194 F.3d 737 (6th Cir. 1999).  Lastly, the Southern District of Ohio has accepted official copies of hearing panels' decisions, transcripts from hearings, and post-hearing briefs, and resolutions when the plaintiff alleged procedural fairness of a hearing in an action under 42 U.S.C. § 1983.  *Anderson v. Ohio State Univ.*, Case No. 2:00-cv-00123, 2001 WL 99858, at *7 (Kinneary, J.), *aff'd* 26 F. App'x 412 (6th Cir. 2001).

In this case, when all the allegations in the Complaint, together with all the documents attached and necessary to fill in the details, are examined, Plaintiff's claims fail as a matter of law.  The Complaint should, therefore, be dismissed.

### B.  Defendants Are Entitled To Qualified Immunity

Plaintiff's Complaint should be dismissed based on the doctrine of qualified immunity.  Qualified immunity entitles government officials not to stand trial or face the other burdens of litigation, "conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell v. Forsyth*, 472 U.S.

12

511, 526 (1985).  The question of whether a plaintiff has asserted a violation of a clearly

established right necessarily includes the "determination of whether the plaintiff has asserted a

violation of a constitutional right at all," which is a "purely legal question."  *Siegert v. Gilley*,

500 U.S. 226, 232 (1991).  The resolution of that question at the earliest stage of a case in

response to a motion to dismiss furthers the fundamental purpose of the qualified immunity

doctrine.

> In Harlow we said that "[u]ntil this *threshold* question is resolved,
> discovery should not be allowed."  [*Harlow v. Fitzgerald*, 457 U.S. 800, 818
> (1982) (emphasis added).]  A necessary concomitant to the determination of
> whether the constitutional right asserted by plaintiff is "clearly established" at the
> time the defendant acted is the determination of whether the plaintiff has asserted
> a violation of a constitutional right at all.  Decisions of this purely legal question
> permits courts expeditiously to weed out suits which fail the test without requiring
> a defendant who rightly claims qualified immunity to engage in expensive and
> time consuming preparation to defend the suit on its merits.  One of the purposes
> of immunity, absolute or qualified, is to spare a defendant not only unwarranted
> liability, but unwarranted demands customarily imposed upon those defending a
> long drawn out lawsuit.

*Id.* at 232.  *See also Veney v. Hogan*, 70 F.3d 917 (6th Cir. 1995).

To overcome the defense of qualified immunity, a plaintiff must show, first, whether a

constitutional violation occurred; second, whether the right violated was clearly established; and

third, whether the plaintiff has alleged sufficient facts to indicate that "what the official allegedly

did was objectively unreasonable in light of the clearly established constitutional rights."

*Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir. 1999).  While set out as three sequential steps,

the order in which these questions should be considered is not mandatory.  *Pearson v. Callahan,*

555 U.S. 223, 237–44 (2009).  A court has discretion in deciding which questions should be

answered first and in what order.  Failure on any one, however, will entitle the defendant to

qualified immunity.  *See id.*

In many cases, the qualified immunity analysis begins and ends with the second question – whether the defendant's conduct violated clearly established law.  *Id.* at 233–34.  In answering that question, a court must find that the statutory or constitutional rights at issue were "so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct."  *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987).  A right is clearly established if:

> The contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness is apparent.

*CareToLive v. Eschenbach*, 525 F. Supp. 2d 952, 963 (S.D. Ohio 2007) (Frost, J.) (quoting *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002)).[1]  As for the third inquiry in the qualified immunity analysis, the question is not what the defendant understood, but "whether a hypothetical official, standing in the defendant's shoes, would necessarily have understood that taking the steps challenged by the plaintiff would violate the plaintiff's clearly established constitutional or statutory rights."  *Cullinan v. Abramson*, 128 F.3d 301, 309 (6th Cir. 1997).

---

[1] The Sixth Circuit has further explained:

> In this circuit, a finding of a clearly established constitutional right must generally be supported by precedent from the Supreme Court or this circuit, or in the alternative, by decisions from other circuits. * * * Although decisions of other courts can clearly establish the law, such decisions must both point unmistakably to the unconstitutionality of the conduct and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional.

*Mumford v. Zieba*, 4 F.3d 429, 432–33 (6th Cir. 1993) (internal citation omitted).

14

To state a procedural due process claim, a plaintiff must allege three elements:  "'(1) that [it] ha[s] a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . . , (2) that [it] w[as] deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford [the plaintiff] adequate procedural rights prior to depriving [it] of [its] protected interest.'"  *Med. Corp. v. City of Lima*, 296 F.3d 204, 409 (6th Cir. 2002) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000)).  While in most cases, "the Constitution requires some kind of hearing before the State deprives a person of liberty of property," *Zinerman v. Burch*, 494 U.S. 113, 127 (1990), a plaintiff also must allege that the state's postdeprivation remedies for redressing the wrong are inadequate.  *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), *cert. denied*, 469 U.S. 834 (1984).

The requirement that plaintiff prove and plead that state law remedies are inadequate was first announced in *Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981).[2]  In *Parratt*, the Supreme Court held that when an individual is negligently deprived of a property interest due to the unauthorized failure of state actors to follow established state procedure, due process is satisfied if the individual has access to adequate postdeprivation process.  The Court held that state remedies may be adequate to satisfy the requirements of due process even if they do not provide all the relief the individual may seek under § 1983.  *Id.* at 544.  Indeed, *Parratt* and its progeny find that a plaintiff's due process rights are adequately satisfied even when the state remedies available to the plaintiff did not allow suits against individual state employees and allow only suits against the State.  *Id.*  The *Parratt* doctrine has been extended to apply to intentional, as well as negligent, acts of state actors, *Hudson v. Palmer*, 468 U.S. 517, 532–33 (1984), and to

_____

[2]  *Parratt* was overruled in part on other grounds in *Daniels v. Williams*, 474 U.S. 517, 531 (1984).

15

deprivations of liberty interests, as well as property interests, *Wilson v. Beebe*, 770 F.2d 578 (6th Cir. 1985) (*en banc*).

Under *Parratt,* a court should dismiss a procedural due process claim "based on the fact that the state provides the claimant adequate postdeprivation remedy if:  1) the deprivation was unpredictable or 'random'; 2) predeprivation process was impossible or impracticable; and 3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty." *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir. 1995) (citing *Zinermon*, 494 U.S. at 136–39).[3] Case law within the Sixth Circuit has held that acts which do not comport with state law or procedures are unpredictable or "random" for purposes of *Parratt*. *See Vinson v. Campbell Cty. Fiscal Court*, 820 F.2d 194 (1987) (not following an established state procedure is a random act, predeprivation process is impossible as the state cannot predict that an established procedure would not be followed, and, where "state law provides a means for the plaintiff to be made whole for his loss occasioned by the wrongful act, there has been no denial of procedural due process") (internal citation omitted); *Clemons v. Frassetto*, 132 F.3d 32, 1997 WL 778121, at *1 (6th Cir. 1997) (unpublished) ("If the official performing the state procedure fails to follow the state procedure, or conform his conduct to state law, the plaintiff's injury is the result of a 'random and unauthorized act' which the state was unable to foresee."); *Jackson*, 67 F. Supp. 2d at 859

---

[3] In *Macene v. MJW, Inc.*, the Sixth Circuit explained that, in a § 1983 action, a "plaintiff can prevail on a procedural due process claim by demonstrating that the property deprivation resulted from either (1) an established state procedure that itself violates the due process rights, or (2) a 'random and unauthorized act' causing a loss for which available state remedies would not adequately compensate the plaintiff."  951 F.2d 700, 706 (6th Cir. 1991).  In this case, Daily Services unequivocally states that it "is not challenging the constitutionality of [the administrative process under which the BWC is authorized to issue assessments and file certified judgments and liens due to an employer's failure to timely pay premiums to the BWC.]  *See* Compl. ¶ 28.  Instead, Plaintiff alleges that Defendants' actions violated due process because they failed to comport with the procedures prescribed in the Ohio Revised Code and the Ohio Administrative Code.  *See id.* ¶¶ 45, 52, 56, 61, 66, 76, 87.

(Graham, J.) (allegations of taking action not authorized by state procedure or law "indicate that the deprivation was unpredictable or random"); *see generally Silberstein v. City of Dayton,* 440 F.3d 306, 316 (6th Cir. 2006) (a deprivation "through an established state procedure" is not random or unauthorized); *Chaz Constr., LLC v. Codell*, 137 F. App'x 735, 742 (6th Cir. 2005) ("Since the alleged procedural due process violation was pursuant to an unauthorized official act and since the state procedures provided an adequate post-deprivation remedy, the district court appropriately dismissed the plaintiffs' § 1983 claim" under *Parratt*.)  As one court recently explained:

> If the official performing the state procedure fails to follow the state procedure or conform his conduct to state law, the plaintiff's injury is the result of a "random and unauthorized act" which the state was unable to foresee and thus prevent.

*McKinney v. Mullen*, No. 2:10-cv-305, 2011 WL 9309, at *2 (W.D. Mich. Jan. 3, 2011).  *But see Warren v. City of Athens,* 411 F.3d 697, 709 (6th Cir. 2005) (an act is "unauthorized" when "the official in question did not have the power or authority to effect the deprivation, not that the act was contrary to law").

In the case here, Daily Services' Complaint has not stated a due process claim sufficient to overcome the defense of qualified immunity.  Although not specifically pleaded, the Complaint suggests that Daily Services believes that it was deprived of a protected property interest by virtue of the BWC's filing of judgments and liens for the unpaid premiums.  *See* Compl. ¶¶ 10–14.  Plaintiff alleges that Defendants' actions violated due process because they failed to comport with the procedures prescribed in the Ohio Revised Code and the Ohio Administrative Code.  *Id.*  ¶¶ 45, 52, 56, 61, 66, 76, 87.  Defendants' actions were, thus, random and unpredictable, thereby indicating that predeprivation process was impracticable under these

17

circumstances.  Under *Parratt*, therefore, Plaintiff must plead and prove that available postdeprivation remedies were inadequate.

The Complaint lists nine separate causes of action, each of which is based on a specific judgment or lien obtained by the BWC.  Compl. ¶¶ 105 – 119.  Each cause of action is worded in almost identical terms, with the only difference being the specific judgment or lien that Daily Services contends was obtained without due process of law.  As alleged in the Complaint, Daily Services disputed each judgment and each lien either with the BWC or in the Franklin County Court of Common Pleas.  With respect to the judgments and liens that are the subject of the first eight causes of action, Daily Services' Complaint pleads that it was successful in having the judgments and liens released or set aside.  *Id.* ¶¶ 49, 59, 62, 67, 79–80, 83–85.  As for the Ninth Cause of Action, which refers to the so-called "Talent" judgment and lien, that judgment and lien have been released in response to Daily Services' challenge in the Franklin County Court of Common Pleas.  Records of the Common Pleas Court make that clear.  *See* Ex. C, attached hereto.

Plaintiff's Complaint fails to allege that available state remedies for redressing the alleged wrong by Defendants were inadequate.  As a matter of fact, the Complaint pleads just the opposite.  It alleges that Daily Services had access to and succeeded in pursing postdeprivation remedies.  In some cases, Daily Services defeated the judgments and liens through motions for relief under Ohio R. Civ. P. 60(B).  In others, its legal challenges resulted in the BWC's voluntarily releasing the judgments and liens.  Either way, Daily Services obtained relief.  *See Jackson v. City of Columbus*, 194 F.3d 737, 749–51 (6th Cir. 1999) (affirming district court's dismissal of due process claim brought by the former Columbus chief of police on the grounds that he had adequate state law remedies to challenge his suspension from office).

The Complaint also ignores that Daily Services had available other postdeprivation state remedies.  It could appeal any assessments under Ohio Rev. Code § 4123.37.  Another option available to Daily Services is to bring a separate lawsuit in state court, which, as discussed above, it already has done.  In that case, Daily Services is free to allege due process and other claims against the BWC.  *Felder v. Casey*, 487 U.S. 131 (1988) (requiring state courts to hear federal constitutional claims); *see Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 15 (1987) ("when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy").

Or, Daily Services could file a writ of mandamus to compel the BWC to adhere to its procedures before obtaining any judgment or lien.  *See State ex rel. Husted v. Brunner*, 123 Ohio St. 3d 119, 2009-Ohio-4805, ¶ 11 (to be entitled to a writ, a relator must establish a clear legal right to the requested relief, a corresponding legal duty on the part of the respondent to provide it, and lack of an adequate remedy in the ordinary course of law).  Daily Services knows how to invoke Ohio's mandamus procedures because it currently has such a case pending against the BWC seeking public records.  *See* Compl. ¶¶ 7 – 9; *State of Ohio ex rel. Daily Services, LLC & I-Force, LLC v. Buehrer*, Case No. 11-AP-000810, Tenth District Court of Appeals.

Finally, even if Daily Services was somehow able to show that it need not plead and prove that its available postdeprivation remedies were inadequate, Defendants still would be entitled to qualified immunity.  Daily Services cannot establish that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001).  Defendants would not have been on clear notice that their actions violated due process because, as discussed above, case law in the Sixth Circuit holds that the lack of predeprivation due process will not state a claim if the plaintiff had available adequate state

19

law remedies.  Admittedly, one Sixth Circuit case indicates that *Parratt* does not apply when the official did not have the power or authority to effect the deprivation, *Warren,* 411 F.3d at 709–10, and here the BWC at least did have that authority pursuant to Ohio Rev. Code § 4123.37.[4]  But other cases, as cited above, hold more generally that violations of state law or procedures are considered random and unauthorized, thereby mandating the application of *Parratt.*  In view of this, it cannot fairly be said that Defendants were on clear notice that their alleged failure to provide predeprivation process violated Daily Services' constitutional rights.[5]  Defendants are, accordingly, entitled to qualified immunity.

### C.    Plaintiff's Due Process Claims Should Be Dismissed As Moot.

Not only does the availability of adequate state law remedies defeat Daily Services' claims under the doctrine of qualified immunity, but the fact that Daily Services succeeded in availing itself of those remedies renders its claim moot.  The Sixth Circuit has held on several occasions that a federal § 1983 claim is barred by mootness principles once a plaintiff's injuries are adequately redressed in a parallel state court proceeding.  In *Braley v. City of Pontiac,* for example, a plaintiff successfully asserted state law claims against a local police officer stemming from an encounter with the local police.  906 F.2d 220 (6th Cir. 1990).  The plaintiff then sued in

---

[4] Even so, *Warren* is distinguishable from this case.  There, the Sixth Circuit found that it was not even clear whether the plaintiffs had available state remedies.  411 F.3d at 710 ("Moreover, even if the *Parratt* rule did apply, it is not clear that any state remedies were available to the Warrens.").  Thus, whether the defendant's actions were or were not random or unauthorized did not matter.  Plaintiffs would still prevail because of the absence of adequate state remedies.  To that extent, the court's discussion of when *Parratt* applies is dicta.  The situation here is far different.  In this case, Daily Services had access to and was successful in pursuing state-law remedies.

[5] In reviewing case law on when an official's act is considered to be random or unpredictable for purposes of *Parratt,* a decision from the Eastern District of Michigan recently observed that "the Sixth Circuit has been less than clear on whether Plaintiffs need to show the inadequacy of state remedies before proceeding in federal court."  *Sanchez v. Twp. of Kochville,* No. 09-CV-12076, 2010 WL 5648528, at *8 (E.D. Mich. Oct. 14, 2010).

federal court under § 1983.  The district court dismissed his federal claims and the Sixth Circuit affirmed, holding that a plaintiff's success in state court mooted his federal claims even though the recovery he obtained in state court may not be identical to any recovery obtainable in federal court.  *Id.* at 223–24.

Likewise, in *WJW-TV, Inc. v. City of Cleveland*, a local television station sued in federal court challenging under the First Amendment, under Ohio's "sunshine" law, and under the city charter its exclusion from a Cleveland city council meeting.  878 F.2d 906 (6th Cir. 1989).  The district court granted summary judgment for the television station, holding that its exclusion from the meeting violated the First Amendment.  While on appeal, the Ohio Supreme Court ruled in a case arising from the same facts and found that the meeting violated the open meeting provision of the Cleveland city charter.  In light of the intervening state decision, the Sixth Circuit dismissed the appeal based on mootness.  "The general principle in cases involving a constitutional challenge is to avoid [a determination that a particular activity is] unconstitutional if the viable issues in the case may be disposed of on some other reasonable basis."  *Id.* at 910 (quoting *Fleet Aerospace Corp. v. Holderman*, 848 F.2d 720, 724 (6th Cir. 1988)).  *See also Campbell v. City of Allen Park,* 829 F.2d 576, 580 (6th Cir. 1987) (constitutionality of plaintiff's discharge had become moot once she succeeded in her state law remedies).

Here, Daily Services' due process claims are moot.  As alleged in the Complaint, Daily Services was either successful in challenging the BWC's judgment and liens using state court procedures, or convinced the BWC to release the judgment and liens based on its state law challenges.  Daily Services has had adequate due process through state procedures.  Its constitutional claims are now moot.

### D. __Defendant Valentino Is Immune From Suit.__

Defendant Valentino enjoys an additional reason why the claims against her should be dismissed.  She is mentioned in the Complaint as having conducted an administrative hearing and said various things related to that hearing.  Compl. ¶¶ 20 – 27.  Those allegations, however, cannot give rise to a claim for relief.  Under both Ohio and federal law, "[a]dministrative officers performing quasi-judicial functions are afforded absolute immunity from liability for their judicial acts."  *Mack v. Ohio State Dental Bd.*, 2001 WL 309115 (Tenth Dist. Ct. App. Mar. 30, 2001) (citing *Butz v. Economou*, 438 U.S. 478 (1978)).  The immunity is lifted only when the judicial officer acts in the complete absence of jurisdiction:

> A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."

*Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *see also Kelly v. Whiting*, 17 Ohio St. 3d 91, 93 (1985).  Here, Defendant Valentino was acting within her jurisdiction to conduct a hearing and decide I-Force's application for self-insured status.  She is therefore immune from suit for anything connected with that hearing.

### E. *__Younger__* __Abstention Applies.__

Not only should this case be dismissed, but at a minimum, this Court should abstain from hearing Daily Services' claims under *Younger v. Harris*.  501 U.S. 37 (1971).  That is because the central issues before the Court are the subject of both a pending state case before the Franklin County Court of Common Pleas and a pending appeal in Ohio's Tenth District Court of Appeals.

A federal district court should abstain from exercising jurisdiction where resolution of the claim in federal court would offend principles of comity and federalism by interfering with an ongoing state proceeding.  *Id.* at 37.  A strong policy exists against federal intervention into state

proceedings "in the absence of great and immediate irreparable injury to the federal plaintiff." *Id.* at 44; *see also Fieger v. Cox*, 524 F.3d 770, 774 (6th Cir. 2008).  Although *Younger* arose in the context of a state criminal proceeding, the Supreme Court has extended its principles to state civil proceedings in which important state interests are implicated, *Huffman v. Pursue, Ltd.* 420 U.S. 592 (1975); state administrative proceedings*, Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986); and actions seeking only money damages. *Feaster v. Miksch*, 846 F.2d 21 (6th Cir. 1988).  In a money damages case like this one, unlike in a case for injunctive or declaratory relief, the federal court stays, rather than dismisses, the case pending the outcome of the case in state court.  *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988).  Indeed, according to the Sixth Circuit, a federal action for damages under 42 U.S.C. § 1983 "is a textbook case for *Younger* abstention."  *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075 (6th Cir. 1998).

Three factors determine whether a federal court should abstain from interfering in a state court action:  (1) whether the underlying proceedings constitute an ongoing judicial proceeding, (2) whether the proceedings implicate an important state interest, and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge.  *Fieger*, 524 F.3d at 775 (citing *Tindall v. Wayne Cty. Friend of the Court,* 269 F.3d 533, 538 (6th Cir. 2001)).  In this case, each of the factors is met.

First, there is an "ongoing judicial proceeding."  *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006).  When this action was filed, Daily Services and the BWC were, and remain, engaged in a lawsuit pending in the Franklin County Court of Common Pleas with identical facts as those here.  In addition, Daily Services and the BWC also remain as parties to the appeal of

Judge Reece's 60(B) decision, and that appeal remains pending as of today's date.  Since both the state law suit and the appeal are pending, the first *Younger* factor is satisfied.[6]

Second, the two pending state cases implicate important state interests.  Both state cases involve Ohio's workers' compensation system.  Among other things, in the common pleas court action, the BWC seeks judicial determination whether Daily Services is a successor-in-interest to I-Force, and thus responsible for I-Force's unpaid workers' compensation premiums.  As part of the discharge of its statutory duties, the BWC can determine whether a succession transaction is entered into for the purpose of escaping obligations to Ohio workers' compensation system.  Ohio Admin. Code § 4123-17-02.  It is of great interest to the State that the BWC retain the ability to recover debts owed to it, and in particular, recover premiums from employers.  *See generally* Ohio Admin. Code §§ 4123-1-01 – 4123-19-16.  If such money is not recovered and if suspect corporate transfers are not challenged under Ohio's workers' compensation laws, the financial stability of the State Fund is placed in jeopardy and the ability of the BWC to administer benefits to Ohio's injured workers is threatened.[7]  The State's significant interest in a financially stable workers' compensation system satisfies the second *Younger* factor.

Third, Daily Services can assert its constitutional challenges in the state court proceeding.  As noted, Daily Services can bring its federal § 1983 claims in state court as Ohio's court system provides it with the opportunity to raise any constitutional challenges, including alleged

---

[6] When the plaintiff in a federal suit is the target of "an ongoing state action involving important state interests, the [plaintiff in a federal suit] cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case." *Carroll*, 139 F. 3d at 1075–76.  In such a case, *Younger* abstention requires the federal court to defer to the state proceeding. *Id.* (citation omitted).

[7] "The State Fund of Ohio is statutorily mandated for the sole purpose of financing Ohio's workers' compensation system.  All employees of public and private employers who contribute to the State Fund of Ohio are eligible for workers' compensation benefits administered by the [BWC]." www.ohiobwc.com/basics/guidedtour/generalinfo /provglosscompsys.asp (last visited March 13, 2012).

violations of due process.  *See Fieger*, 524 F.3d at 775–76 (as a reason for invoking *Younger*

abstention, the court found that plaintiff could have brought § 1983 claims in state court, but

instead chose to circumvent state procedure and file in federal court).  In fact, Daily Services

recognizes its ability to invoke its constitutional rights in state court as it successfully raised the

failure of service of the assessments and the violations of its due process rights in several

motions for relief from judgment in state court.  Daily Services has or had an adequate

opportunity to raise these challenges, as well as a damages claim, in cases still ongoing in Ohio

courts.

Since all three factors are met, *Younger* abstention directs the federal court to defer to the

state proceeding.  This Court should abstain from exercising jurisdiction over this case, at least

while the two state cases remain pending in Ohio courts.  Defendants request that the case be

stayed pending resolution of the associated cases in Ohio state courts.

## IV.    **CONCLUSION**

For each of the reasons discussed above, Defendants Valentino, Kielmeyer, Sico, and

John Does 1 through 5, respectfully request that this Court dismiss the Complaint or, in the

alternative, stay the case on the grounds of abstention.

Respectfully submitted,

MICHAEL DEWINE (0009181)
Attorney General of Ohio

s/ James A. King
James A. King (0040270)
Trial Attorney
James B. Hadden (0059315)
Caitlin E. Chamberlin (0084229)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 South High Street
Columbus, Ohio  43215
Phone:  (614) 227-2000 Fax: (614) 227-2100
jking@porterwright.com
jhadden@porterwright.com
cchamberlin@porterwright.com

*Special Counsel to Ohio Attorney General,*
*Counsel for Defendants Tracy Valentino, Tina*
*Kielmeyer, Tom Sico, and John Does 1 through 5*

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be provided through the Court's electronic filing system.  Parties may access the document through the electronic filing system.


<u>s/ James A. King</u>
James A. King