UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAILY SERVICES, LLC,

       Plaintiff,

                                        Civil Action 2:11-cv-01147

     v.                          Magistrate Judge Elizabeth Deavers

TRACY VALENTINO, *et al.*,

       Defendants.

## OPINION AND ORDER

Plaintiff, Daily Services, LLC, an Ohio company, files this action against various employees of the Ohio Bureau of Wokers' Compensation ("BWC"), alleging violations of its Constitutional right to procedural due process. This matter is before the Court for consideration of Defendants' Motion for Judgment on the Pleadings or Alternatively to Stay on the Grounds of Abstention. (ECF No. 10.) Plaintiff filed its Memorandum in Opposition to Defendants' Motion on April 27, 2012. (ECF No. 19.) Defendants filed their Reply on May 14, 2012. (ECF No. 20.) On June 4, 2013, Defendants filed a Notice of Supplemental Authority highlighting three recent state-court rulings related to Plaintiff's allegations, to which Plaintiff responded.. (ECF Nos. 21 and 24.) This case was referred to the United States Magistrate Judge on June 26, 2013. For the reasons that follow, the Court concludes that Defendants are entitled to qualified immunity. Defendants' Motion for Judgment on the Pleadings is, therefore, **GRANTED**.

### I.

According to the Complaint, Plaintiff is a company that provides temporary employment services in Central Ohio. (Compl. ¶¶ 17, 27, ECF No. 1.) Ryan Mason is the sole member of Plaintiff. Mason was also the sole member of an Ohio company known as I-Force, LLC ("I-

Force"). I-Force also provided temporary employment services in Central Ohio, but on a longer-term basis than those arranged by Plaintiff. *Id.* at ¶ 16.

I-Force applied for self-insured status within the BWC in June, 2008. In November, 2008, the BWC denied I-Force's application to become self-insured. I-Force then owed over $3 million in unpaid workers' compensation premiums. Because it could not make this payment, I-Force closed in March, 2009.

After I-Force closed, Plaintiff acquired a portion of I-Force's customers and began to provide longer-term employment services. Consequently, the BWC sought to hold Plaintiff liable for I-Force's unpaid workers' compensation premiums. In doing so, however, Defendants purportedly failed to provide Plaintiff with notice and opportunity to be heard, as Ohio law requires.

According to Plaintiff, Ohio law sets forth specific procedures that the BWC must follow prior to filing liens and judgments against an employer. Specifically, the BWC must first provide the employer with a notice of overdue premiums and an opportunity to pay the premiums within twenty (20) days. *Id.* at ¶ 30 (citing Ohio Rev. Code § 4123.37 and Ohio Admin. Code § 4123-14-02). Upon receipt of the notice, the employer can challenge the assessment by filing a petition for reassessment. If the employer files a petition for reassessment, the BWC administrator will issue an ultimate finding, which is then appealable to the Franklin County Court of Common Pleas. If the employer does not file a petition for reassessment after receiving a notice of assessment, the BWC may certify that the assessment has become final by operation of law. Thereafter, the BWC may file a lien or judgment (or both) with the county recorder or the Franklin County Court of Common Pleas.

2

Ohio law also provides a procedure by which the BWC may transfer rights and obligations, such as unpaid premiums, from one company to another. *Id.* at ¶ 52 (citing Ohio Rev. Code § 4123.32(D), Ohio Admin. Code § 4123-17-02-(C)(1)).  According to Plaintiff, successor liability is appropriate under Ohio law when it is determined that "one employer wholly succeeds another in the operation of a business." *Id.*

Plaintiff alleges that Defendants failed to comply with the foregoing requirements prior to filing liens and judgments against it.  Plaintiff maintains that Defendants did so in an effort to put it out of business.  Defendants allegedly filed a series of liens and judgments without a prior determination that Plaintiff is legally a successor to I-Force.  In addition, Plaintiff contends that Defendants failed to provide a notice of assessment and opportunity to file a petition for reassessment with respect to at least three sets of liens and judgments.  Specifically, according to Plaintiff, Defendants failed to provide a notice of assessment prior to filing a $54 million lien and a $54 million judgment against Plaintiff on November 6, 2009; a $22 million lien on November 17, 2009; and a $3 million lien and $3 million judgment on July 8, 2010.  *Id.* at ¶¶ 54, 62, 65.

Plaintiff contends that in light of Defendants' failure to provide notice and opportunity to be heard in accordance with Ohio law, the Franklin County Court of Common Pleas vacated the $54 million judgment and the $3 million judgment on February 8, 2011 and October 4, 2010, respectively.  *Id.* at ¶¶ 62, 63.  After the State court decisions vacating the judgments, on February 18, 2011, Defendants released the $54 million lien, the $22 million lien, and the $3 million lien.  (Compl. ¶ 73, ECF No. 1.)

That very same day, however, Defendants filed another $3 million lien and $3 million judgment against Plaintiff for past-due premiums.  *Id.* at ¶¶ 73, 74.  Although this time

Defendants provided prior notice of the assessment, an appeal of the assessment was pending in

the BWC administrative process when Defendants filed the lien and judgment, rendering the lien

and judgment premature and in violation of Ohio law. The BWC eventually denied Plaintiff's

appeal the $3 million assessment, concluding, incorrectly according to Plaintiff, that it had

previously determined that Plaintiff was a successor to I-Force. Plaintiff subsequently appealed

that decision to the Franklin County Court of Common Pleas and prevailed, resulting in the court

vacating the $3 million judgment.[1]

According to Plaintiff, Defendants acted in an effort to put it out of business, partly

because Defendant Valentino is a friend of the owner of one of Plaintiff's competitors. *Id.* at ¶ 8.

Plaintiff alleges that Defendants' actions prevented it from securing conventional financing. Due

to the inappropriate liens and judgments, Plaintiff submits that Defendants caused it to incur

approximately $1 million in excess interest charges. Plaintiff alleges that Defendants violated its

due process rights under 42 U.S.C. 1983 causing it significant financial damages.

## II.

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to "move for judgment

on the pleadings." Fed. R. Civ. P. 12(c). The Court evaluates a motion filed under Rule 12(c)

using the same standard as a Rule 12(b)(6) motion to dismiss. *Roth v. Guzman*, 650 F.3d 603,

605 (6th Cir. 2011). To survive a motion to dismiss for failure to state a claim under Rule

---

[1]The authority Defendants provided in their Notice of Supplemental Authority indicates that the parties continued to contest the issue of successor liability in the Ohio court system after Plaintiff filed this action. Defendants apparently appealed the Franklin County Court of Common Pleas' ruling setting aside the $3 million judgment, without success. The Ohio Tenth District Court of Appeals affirmed the trial court's ruling on September 18, 2012. (Notice of Supp. Auth., Ex. 1, ECF No. 21-1.) The parties are currently involved in litigation in the BWC administrative process to obtain a final determination as to successor liability. *Id.* at 4.

12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal

pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  Under Rule 8(a)(2), a

complaint must contain a "short and plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands

on the authors of complaints."  *16630 Southfield Ltd.*, *P'Ship v. Flagstar Bank*, *F.S.B.*, --- F.3d

----, No. 12-2620, 2013 WL 4081909, at *1 (6th Cir. Aug. 14, 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a]

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action,'" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not "suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a

complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on

its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.*  "The plausibility of an inference depends on

a host of considerations, including common sense and the strength of competing explanations for

the defendant's conduct."  *Flagstar Bank*, 2013 WL 4081909 at *2 (citations omitted).

### III.

### A.    The Parties' Positions

In the instant Motion, Defendants assert that they are entitled to judgment on the

pleadings because Plaintiff has failed to plead that state law remedies were inadequate to

compensate its lost property interest.  In the alternative, Defendants submit that qualified immunity protects them from liability because, at the time of their alleged conduct, it was not clearly established law that their purported conduct would give rise to a due-process entitlement to predeprivation process.  Put another way, although Defendants concede for purposes of this Motion that they deprived Plaintiff of a property interest, they contend that it was not clearly established law that Plaintiff was entitled to anything more than postdeprivation review to compensate the loss.  In support of their position, Defendants invoke a doctrine first announced in *Parratt v. Taylor*, 451 U.S. 527 (1981), which generally requires plaintiffs who have been deprived of a property interest as a result of "random and unauthorized" conduct to plead and prove a lack of adequate postdeprivation state-law remedies.

Plaintiff asserts that *Parratt* does not apply, and thus that it is not required to plead a lack of adequate state law remedies.  In addition, Plaintiff contends that the clearly established law in effect at the time of Defendants conduct required them to provide predeprivation process to satisfy procedural due process.

## B.    Procedural Due Proccess and the *Parratt* Doctrine

The Fourteenth Amendment provides that "[n]o State shall . . .  deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To sustain a procedural due process claim, a plaintiff must first point to a property or liberty interest that is entitled to due-process protection.  *Mitchell v. Frankhauser*, 375 F.3d 477, 480 (2004) (citing *Leary v. Dawschner*, 228 F.3d 729, 741-42 (6th Cir. 2000)).  Once the plaintiff makes such a showing, the court "must then determine what process is due."  *Id.* (quoting *Leary*, 228 F.3d at 741).  Here, the parties do not contest that Plaintiff held a property interest which was entitled to

due process protection. Thus, the Court addresses only the question of what process Plaintiff was due.

"Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens, Oh.*, 411 F.3d 697, 708 (6th Cir. 2005); *see also Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001) ("Courts have long recognized that the Fourteenth Amendment requires that an individual who is deprived of an interest in liberty or property be given notice and a hearing."). Nevertheless, a line of United States Supreme Court cases illustrates that, under certain limited circumstances, the lack of predeprivation process will not invariably render the taking unconstitutional.

In *Parratt v. Taylor*, 451 U.S. 527 (1981),[2] an inmate alleged that a guard's negligent loss of his mail-ordered hobby kit deprived him of property without due process of law. The Court recognized that the "fundamental requirement of due process is the opportunity to be heard and it is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Id.* at 540. Where the "random and unauthorized" negligence of a state official, as opposed to an "established state procedure," causes the deprivation, the Court recognized that "[i]t is difficult to conceive how the State could provide a meaningful hearing before the deprivation takes place." *Id.* at 541. Ultimately the Court concluded as follows:

> [E]ither the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking . . . satisf[ies] the requirements of procedural due process.

---

[2]*Parratt* was subsequently overruled in part on unrelated grounds. *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

*Id.* at 539.

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court extended the *Parratt* doctrine to the random and unauthorized *intentional* conduct of state employees.  There, an inmate alleged that a corrections officer intentionally destroyed his non-contraband items. Reasoning that "a state can no more anticipate and control in advance random and unauthorized conduct of its employees than it can anticipate similar negligent conduct," the Court held that *Parratt* applied, rendering postdeprivation process sufficient to satisfy procedural due process. *Id.* at 533.  The Court indicated that when a plaintiff is not challenging an established state procedure, the "controlling inquiry is solely whether the state is in a position to provide for predeprivation process."  *Id.* at 534.

In its most recent opinion on point, the Supreme Court addressed the contours of the *Parratt* doctrine in *Zinermon v. Burch*, 494 U.S. 113 (1990).  The plaintiff in *Zinermon* alleged that officials at a state mental-health institution deprived him of his liberty without due process when they permitted him to consent to his voluntary commitment to the institution even though they knew or should have known that he was incompetent to provide informed consent.  The Court emphasized that "*Parratt* and *Hudson* represent a special case of the general [due process analysis] in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide."  *Id.* at 128.  The dispositive issue, as the Court saw it, was "whether predeprivation procedural safeguards could address the risk of deprivation of the kind [the plaintiff] alleges."  *Id.* at 132.  The Court determined that safeguards could have addressed the risk in that case:

> The risk is that some persons who come into Florida's mental health facilities will
> apparently be willing to sign forms authorizing admission and treatment, but will be

8

> incompetent to give the express conformed consent required for voluntary placement. Indeed, the very nature of mental illness makes it foreseeable that a person needing mental health care will be unable to understand . . . the forms that person is asked to sign, and will be unable to make a knowing and willful decision whether to consent to admission.

*Id.* at 133. Ultimately, the Court concluded that *Parratt* did not apply for three reasons. First, it found that "[a]ny erroneous deprivation will occur, if at all, at a specific, predictable point in the admission process – when a patient is given admission forms to sign." *Id.* at 136. Second, because the risk of deprivation was foreseeable, the Court found that it was not impossible for Florida to provide predeprivation process in the voluntary admission process. *Id.* Distinguishing *Parratt* and *Hudson*, the Court noted that "[i]t would do no good for the State to have a rule telling its employees not to lose mail by mistake, . . . [or] a rule forbidding a prison guard to maliciously destroy a prisoner's property . . . ." *Id.* Third, the Court found that the conduct of the state employees was not "unauthorized" as that term was used in *Parratt* and *Hudson*:

> The State delegated to [the state employees] the power and authority to effect the very deprivation complained of here, . . . and also delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful confinement. In *Parratt* and *Hudson*, the state employees had no similar broad authority to deprive prisoners of their personal property, and no similar duty to initiate . . . the procedural safeguards required before deprivations occur. The deprivation here is "unauthorized" only in the sense that it was not an act sanctioned by state law, but, instead, was a deprivation of constitutional rights by an official's abuse of his position.

*Id.* at 138 (internal quotation marks, citations, and modifications omitted).

Accordingly, *Parratt*, *Hudson*, and *Zinermon* demonstrate that to prevail on a procedural due process claim, a plaintiff must establish that the state deprived him of a liberty or property interest pursuant to either (1) an "established state procedure" which itself violates procedural due process rights; or (2) a "random and unauthorized act," and that state law remedies are

inadequate to compensate for the loss. *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Oh.*, 610 F.3d 340, 349-50 (6th Cir. 2010).

## A.     Analysis

Defendants offer various challenges to Plaintiff's claims, including that qualified immunity protects them from liability. The Court agrees that qualified immunity applies, and, therefore, Defendants are shielded from liability.[3]

### 1.     Standard for Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (internal quotation marks and citations omitted). The determination of whether a government official is entitled to qualified immunity involves two inquiries. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010). "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff

---

[3]Because this conclusion is dispositive of the case, the Court need not, and does not, address the remaining issues Defendants raise in their Motion.

shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* (internal quotation marks and citations omitted). This second question turns on whether the right was "so clearly established when the acts were committed that any [official] in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." *Dominique v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987). As this Court has previously indicated, a right is clearly established if

> the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violated that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been unlawful; but it is to say that in the light of pre-existing law the unlawfulness is apparent.

*CareToLive v. Eschenbach*, 525 F. Supp. 2d 952, 963 (S.D. Oh. 2007). In addition, the Court need not consider the first and second qualified-immunity inquiries sequentially. *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (citation omitted).

Furthermore, in determining whether a right is clearly established for purposes of qualified immunity, the Court of Appeals for the Sixth Circuit has directed that courts must "look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 579 (6th Cir. 1997). "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 999 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)).

### 2. Application of Qualified Immunity Defense

Plaintiff's due process claims arise from Defendants' purported deliberate failure to follow Ohio's established procedures requiring notice and opportunity to be heard prior to filing liens and judgments against it. As discussed above, to prevail on a procedural due process claim a plaintiff must generally demonstrate that the defendant effected the deprivation pursuant to (1) an "established state procedure" which itself violates procedural due process rights; or (2) a "random and unauthorized act," for which state law remedies are inadequate to compensate it for its loss. *Wedgewood*, 610 F.3d at 349-50. Here, Plaintiff specifically disavows any direct challenge to Ohio's established procedures. (Compl. ¶ 28, ECF No. 1.) Thus, Plaintiff must demonstrate that Defendants engaged in random and unauthorized acts and available state remedies could not adequately compensate for its loss. Plaintiff contends that although it does not challenge Ohio's established procedure, Defendants' failure to follow Ohio law was not "random and unauthorized" under *Parratt*. Put another way, Plaintiff maintains that *Parratt* does not apply because Defendants' conduct, although noncompliant with Ohio's established procedure, was not "random and unauthorized." Consequently, Plaintiff asserts that it was entitled to predeprivation process, such that the adequacy of postdeprivation remedies is irrelevant.

For purposes of qualified immunity, Plaintiff must demonstrate that, at the time of Defendants' conduct, it was clearly established that Plaintiff was entitled to predeprivation process. Thus, Plaintiff's ability to prevail depends on whether the law was clearly established that an official's deliberate failure to follow established state procedures falls outside of *Parratt*'s

12

reach. Because the meaning and application of *Parratt* are anything but clear, Plaintiff cannot meet its burden.

*Parratt* indicates that the Court is concerned with deprivations that "did not occur as a result of some established state procedure." 451 U.S. at 543. This holding, however, obfuscates the meaning of random and unauthorized conduct. The law in the Sixth Circuit is unsettled as to whether the failure of a public official to follow established procedure constitutes "random and unauthorized" conduct, thereby triggering *Parratt*. In *Copeland v. Machulis*, for example, prison officials allegedly confiscated and withheld an inmate's money in violation of prison policy. 57 F.3d 476, 479 (6th Cir. 1995). In ruling that *Parratt* applied, the Court characterized the deprivation as an "unpredictable and unauthorized departure[] from prison policy directives [that was] beyond the State's reasonable control . . . ." *Id.* Similarly, in *Hebestreit v. Brown*, an inmate alleged that prison officials failed to follow established procedure requiring a hearing before classifying his property as contraband. 995 F.2d 1067, 1993 WL 206535, *1 (6th Cir. 1993). The Court concluded that because prison officials "did not act according to established procedures, . . . their actions were random and unauthorized." *Id.* The Court reasoned that, "[unlike the defendants in *Zinermon*, who had broad discretionary powers to [effect the type of deprivation complained of], and who were sued by a patient who sought to hold [them] accountable for their abuse of their broadly delegated, uncircumscribed power to effect the deprivation at issue, the defendants in the instant case had no choice but to administer a predeprivation hearing." *Id.* at *2; *see also Clemons v. Frassetto*, No. 97-1291, 132 F.3d 32 (table), 1997 WL 778121, *2 (6th Cir. 1997) ("If the official performing the state procedure fails to follow the state procedure, or conform his conduct to state law, the plaintiff's injury is the

13

result of a 'random and unauthorized act' which the state was unable to foresee and thus prevent.").

The law likewise is unclear as to the significance of pleading that an official with policy-making authority effected the deprivation. The Court of Appeals has suggested that conduct is "unauthorized," triggering *Parratt*, only when the official lacks the authority to cause the type of deprivation complained of, even if the official violates established state procedure. For example, in *Warren v. City of Athens, Oh.*, city officials failed to provide a hearing before erecting barricades blocking the entrance to the drive thru of the plaintiff's fast-food restaurant. 411 F.3d 697, 702 (6th Cir. 2005). In finding *Parratt* inapplicable, the Court noted that "'unauthorized' means that the official in question did not have the power or authority to effect the deprivation, not that the act was contrary to law."[4] *Id.* at 709-10; *see also Keenan v. Allen*, No. 93-2398, 28 F.3d 1213 (table), 1994 WL 284118, *1 (6th Cir. 1994) ("This complaint may not be dismissed under the *Parratt* doctrine, because, contrary to the district court's conclusions, [the plaintiff] is arguing that [the defendant] failed to comply with established procedure for conducting a proper hearing, rather than acting outside that procedure in a 'random and unauthorized' manner."); *Abdul-Mateen v. Moton*, No. 93-1662, 19 F.3d 1432 (table), 1994 WL 91827, *2 (6th Cir. 1994) (in declining to apply *Parratt* to prison official's failure to allow inmate to present evidence at a disciplinary hearing as prison policy dictated, the Court noted that "[a]n otherwise lawful act is not rendered random and unauthorized for purposes of *Parratt* merely because the process

---

[4]Arguably, *Warren* is distinguishable from this case because there the plaintiff did not allege that placement of the barricades violated established state procedure. Nevertheless, the Court's broad language suggests that the due-process inquiry depends at least in part as to whether the official possessed the authority to effect the deprivation.

afforded by state law was not followed"); *LRL Prop. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1114 (6th Cir. 1995) (Jones, J. dissenting) (noting, where majority did not reach the issue, that the "conduct of [defendant] was intentional, and it constituted an abuse of authority rather than conduct entirely outside of [defendant's] authority. . . . [H]ad [defendant] merely followed its own procedures . . ., it would not have deprived the [p]laintiffs of the property interest to which they are allegedly entitled.").

Courts outside the Sixth Circuit have pursued varying approaches as to whether an official's failure to follow established procedure constitutes "random and unauthorized" conduct, thereby relieving defendants of their obligation to provide predeprivation process.  For example, the Second Circuit has held that any conduct by a "high ranking official," even conduct that violates established procedure, cannot be considered "unauthorized" under *Parratt*.  *See*, *e.g.*, *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("[T]he acts of high-ranking officials who are ultimate decision-makers and have final authority over significant matters, even if those acts are contrary to law, should not be considered 'random and unauthorized' conduct for purposes of a procedural due process analysis.") (internal quotation marks and citations omitted).  The Ninth and Fourth Circuits look to whether the official possessed the authority to effect the general type of deprivation at issue.  *See*, *e.g.*, *Honey v. Distelrath*, 195 F.3d 531, 534 (9th Cir. 1999) ("We hold that the acts at issue in this case were not random and unauthorized because the defendants in this case had the authority to effect the very deprivation complained of, and the duty to afford [the plaintiff] procedural due process."); *Plumer v. State of Md.*, 915 F.2d 927, 931 (4th Cir. 1990) ("[T]he conduct of the state employees here were not 'unauthorized,' for the state had delegated to its employees the power and authority

15

to effect the very deprivation complained of here . . . .").  Still other courts take a contrary view. *See, e.g.*, *Wright v. Fred Hutchinson Cancer Research Ctr.*, 269 F. Supp. 2d 1286, 1293 (W.D. Wash. 2002) ("Unlike the state mental hospital personnel in *Zinermon*, who were delegated the choice of whether to initiate precommitment hearings . . ., defendants in this case were given no choice to make [because a]ll governing statutes, regulations, policies, and procedures require [predeprivation process]."); *Sheppard v. Welch*, No. 1:05-cv-467, 2006 WL 3134869, *5 (S.D. Ind. Oct. 31, 2006) ("Unlike in *Zinermon*, the Indiana statute does not give the Prosecutor's office discretion to decide whether to provide advance notice and an opportunity for a hearing. The evidence in this case shows no more than unauthorized and unpredictable violations of state law.").

Accordingly, the law in this and other Circuits does not clearly establish that an official's deliberate failure to follow established state procedure falls outside of *Parratt*'s reach.  At best, the law is inconsistent as to whether *Parratt* controls under these circumstances.  Thus, it was not clearly established that Plaintiff was entitled to predeprivation process at the time of Defendants' conduct.  Consequently, even construing Plaintiff's allegations as true, this Court cannot find that Defendants violated Plaintiff's clearly established right to due process.  Defendants therefore enjoy qualified immunity under the facts presented here.

Plaintiff cannot prevail on its contrary arguments.  First, Plaintiff contends that qualified immunity cannot apply because reasonable persons in Defendants' positions would have known that their conducted violated Plaintiff's rights.  (Op. 11-12, ECF No. 19.)  Perhaps a reasonable persons in Defendants' positions would have known that their conduct violated Plaintiff's statutory rights under Ohio law; that, however, is not the inquiry.  The Court cannot conclude

that these persons would have knows that their conduct violated Plaintiff's Constitutional right to due process.  Not every deprivation of a property interest requires predeprivation process. *Hudson*, 468 U.S. at 533.  For the reasons discussed above, the law is unclear as to whether the deprivation complained of here gives rise to an entitlement of predeprivation process.

Relatedly, Plaintiff asserts that qualified immunity is inappropriate because it alleges in its Complaint that Defendants knowingly violated its Constitutional rights.  Thus, according to Plaintiff, a jury must decide whether Defendants acted with the requisite knowledge and intent to violate its Constitutional rights.  A close review of the Complaint reveals that Plaintiff alleges only that Defendants' knowingly violated Ohio law, *i.e.*, that they knowingly violated the statutory right to notice and opportunity to be heard.  Moreover, even if Plaintiff had alleged that Defendants knowingly violated its Constitutional right to due process, whether a right is clearly established is a question of law.  *Hughes v. City of North Olmsted*, 93 F.3d 238, 241 (6th Cir. 1996).  Because the law does not clearly establish that Defendants' conduct falls outside of *Parratt*, and thus that Plaintiff was entitled to predeprivation process, Defendants are entitled to qualified immunity.

## IV.

For the reasons set forth herein, Defendants' Motion for Judgment on the Pleadings is **GRANTED**.  (ECF No. 10.)  The clerk is **DIRECTED** to enter judgment in favor of Defendants and to remove this case from the Court's active cases and motions docket.

**IT IS SO ORDERED**.


Date: September 11, 2013                    /s/ *Elizabeth A. Preston Deavers*
                                        Elizabeth A. Preston Deavers
                                        United States Magistrate Judge

17